UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FORIDA

CASE NO. 24-cr-20201-KM

UNITED STATES OF AMERICA,

v.

DAVID KNEZEVICH,

    Defendant.

_____/

### **REPLY IN SUPPORT OF RENEWED MOTION TO REOPEN DETENTION HEARING**

    DAVID KNEZEVICH ("Knezevich"), through undersigned counsel, pursuant to 18 U.S.C. § 3142(f), files this Reply in Support of his Renewed Motion to Reopen the Detention Hearing ("Renewed Motion") before Magistrate Judge Torres. Knezevich states the following:

### **BACKGROUND**

    Knezevich was arrested on May 4, 2024, upon his arrival from Europe at Miami International Airport. Knezevich had returned to the United States after being informed that the FBI opened an investigation in Miami into the disappearance of his wife in Madrid, Spain, and moreover that he was a suspect. Following a May 10, 2024, detention hearing, Knezevich was ordered detained based on a finding that he was a risk of flight. Since May 10, 2024, Knezevich's counsel have uncovered evidence that the Government's detention proffer and material testimony presented by the Government's detention hearing witness was inaccurate, resulting in a distorted representation of the strength of the Government's case which impacts Knezevich's risk of flight.

    This Court, on July 31, 2024, granted Knezevich's motion to reopen the detention hearing as provided by 18 U.S.C. 3142(f)(5) and set a hearing for August 6, 2024 [D.E. 46]. The Court subsequently re-set the hearing to August 8, 2024, to accommodate the schedule of the prosecutor.

[D.E. 50]. Determined to try and prevent this Court's reception of evidence inconsistent and contradictory to testimony presented at the May 10 detention hearing, on August 4, 2024, the Government filed its "Response in Opposition to the Renewed Motion to Reopen the Detention Hearing". When stripped of its rhetoric, the Government's Response is both factually inaccurate and legally erroneous. Knezevich respectfully submits that this Court reject the Government's "Hail Mary" and proceed with the scheduled August 8, 2024, reopened detention hearing. Knezevich's Reply corrects the record and addresses Government claims aimed at precluding the upcoming reopened detention hearing.

## ARGUMENT

1. **Evidence Produced In Discovery Can Be The Basis To Reopen A Detention Hearing**

The Government's Response baselessly claims that Knezevich's Renewed Motion, which is based on facts and evidence learned in discovery, amounts to a "defense theory" that "every time a defendant receives discovery, they would be entitled to successive detention hearings." [D.E. 52 at 1]. The so called "defense theory" is totally the imagination of the Government and has never been suggested by Knezevich. The Government's warning of an "absurd result" based on the Government's fictitious "defense theory" is nothing more than an attempt to preclude the use of any discovery (that contradicts prior, material government representations) as a basis to reopen a detention hearing.

Knezevich's Renewed Motion is based upon the requirements set forth in 18 U.S.C. § 3142(f)(5). Nothing in that statute, nor any court opinion, prevents new information produced in the Government's discovery from being used as the basis to reopen a detention hearing. The only limitation under the statute is that the new information must be material, as it is here. The Government proffered facts at the detention hearing, and included allegations in its criminal

2

complaint, that are contradicted by new information received in discovery. That is precisely the situation where re-opening the detention hearing is appropriate. The only "absurd result" would be to prevent a defendant from using material information and evidence learned in discovery from re-opening a detention hearing.

2. **<u>Evidence Totally Disproving The Case Agent's Detention Hearing Testimony That There Was Violence At The Alleged Kidnapping Crime Scene Based On The Finding Of "Blood" Is Not A Red Herring</u>**

After manufacturing a fictitious "defense theory" to further the legally unsustainable position that information produced in discovery could not be the basis to reopen a detention hearing, the Government's Response floats another unsustainable position. The Government's Response next claims newly discovered evidence that disproves the case agent's detention hearing testimony that there was violence at the alleged crime scene is a "red herring". Despite the fact that the Government case agent testified at the detention hearing that there was violence at the alleged kidnapping crime scene based on the finding of blood in the apartment, the Government claims in its Response that evidence that categorically disproves the case agent's testimony should not be the basis to reopen the detention hearing "because the Government did not advance blood evidence as a basis to detain the Defendant." [D.E. 52 at 9]. The Government's position that reopening a detention hearing must be based on new information that only relates to that which the Government presents *in its proffer* to the Court and not on, for example, testimony of a case agent, is unsupported by any statute, case law, or logic. The Government's position is even more puzzling, because Magistrate Judge Torres took over questioning of the case agent concerning her testimony that blood was found at the alleged crime scene.

The Government's claim of a "red herring" is based on the presumption that Magistrate Judge Torres only considered what the Government *proffered* at the detention hearing, while

ignoring the testimony of the case agent. Knezevich does not share in that presumption. The fact that no blood was found at the alleged crime scene negates the case agent's testimony that evidence of violence was found at the crime scene. As a result, the Government's claim that a kidnapping took place at the Madrid apartment is significantly undercut, putting detention based on a risk of flight in question. Contrary to the Government's assertion that the absence of blood at the alleged crime scene is a red herring, Knezevich submits that the evidence is the equivalent of a smoking gun.

3. **The Government's Post-Detention Notification To Knezevich That No Blood Had Been Found At The Apartment Only Came After The Defense's Repeated Requests For Blood Analysis And Testing Results**

*The Government claims that when it learned there was no blood in the apartment, that information was relayed to Knezevich*. [D.E. 52 at 11]. This claim suggests that the Government promptly notified the defense that there was no blood. This is far from accurate. The defense hounded the government for weeks on the issue. On **June 24**, defense counsel emailed AUSA Monk inquiring about the blood analysis. On **July 8**, defense counsel again emailed AUSA Monk requesting the blood analysis, advising that it was preparing a motion to compel the production of said reports, among other things. On **July 11**, and *only in response* to this meet and confer email, the Government responded that no blood was found at the apartment, but still the Government did not provide any forensic report to the defense. **On July 24**, defense counsel emailed AUSA Monk *again requesting the forensic analysis*, to which AUSA Monk replied she was attaching a report. The report, which is written entirely in Spanish, concludes the samples taken from the apartment are not blood. The report is dated **June 13, 2024**, and at that point was well over a month old.

4

4. **The Government Response Fails to Address That Madrid Apartment Building Video Does Not Support Conclusions Presented at the Detention Hearing**

Knezevich argued in his Renewed Motion that grainy video footage from the Madrid apartment building does not depict a male with similar features to Knezevich entering and leaving the apartment building with a rolling suitcase. The grainy video contradicts the Government's detention proffer and the criminal complaint. To put the defense argument in context, the Government proffered during the detention hearing that video footage shows "a male, believed by law enforcement to be the Defendant," entering the apartment at 9:52 p.m. with an object, and leaving at 9:55 p.m. with the same object, which looks to be a suitcase. [D.E. 52 at 3]. These allegations are nearly identical to the allegations in the complaint. [D.E. 3 at ¶7]. The defense position is clear: We now have this video footage from 9:52 and 9:55 p.m. and it is impossible to discern any specific characteristics of any person entering the building at 9:52 p.m. and leaving at 9:55 p.m. FBI reports, also obtained in discovery, are even more speculative. The FBI Reports claim the footage *shows a man with the same features at Knezevich* entering the apartment with a suitcase.[1] *See, e.g.*, Serial 10, Bates 8159. The grainy video does not depict any features of the departing individual. Knezevich intends to play both videos (from 9:52 p.m. and 9:55 p.m.) for the Court at the reopened detention hearing.

In its Response, the Government also submitted an unrelated video that was supposedly taken at a hardware store. The hardware store video fails to provide any clarity to the grainy

---

[1] The criminal complaint also suggests the 9:52 p.m. and 9:55 p.m. videos show a male a with the same "physical characteristics" as Knezevich. [D.E. 3 at ¶ 7] (the complaint refers to video footage around 10:30 p.m., which is the same video footage from 9:52 and 9:55 p.m., accounting for what the Government has stated is a time stamp error for the recordings on the apartment camera, causing it to be 38 minutes off the actual time.

apartment building video which is the new evidence for the Court to review. The hardware store video is not at issue and its submission only confuses the issue to be determined by this Court.

5. **The Government Response Fails To Recognize The Significance Of The Man On The Scooter Video**

The Government gives the proverbial back of the hand to the mystery man on the scooter video [D.E. 52 at 12 -13], portraying it as a non-issue that the defense is overblowing and falsely representing. *Id.* The fact is that the defense has recently been provided with numerous FBI reports referencing CCTV footage of a man on a scooter spray painting video cameras *outside the apartment building, on the same day Knezevich's wife allegedly disappeared.* This is indisputable. The FBI references in these reports that there is footage of a "mystery person" who the government now says they do not claim is Knezevich. After weeks of back and forth over this footage, like the back and forth over the blood, the most recent Government explanation is that this information *must have been* conflated in reports because there is no such CCTV footage from outside the building. That, in and of itself, would be relevant to the Court's determination on detention, if the investigative police work memorialized in written reports has repeated errors of this magnitude. It is either erroneous reporting, or erroneous investigating, or the footage does exist, perhaps still in the possession of the Spanish National Police. For the Government to again take the position that we should just ignore all those FBI reports because, like the reports about blood they are inaccurate and not being relied on, calls into question the integrity of the investigation conducted by the Spanish National Police, which formed the basis for the present charge against Knezevich.

6. **The Government's Claim That Knezevich Has Significant Assets That Make Him A Risk Of Flight Is Erroneous**

The Government's claim that Knezevich has significant assets that support a finding of risk of flight [D.E. 52 at 18 – 19] is plainly wrong as the defense will demonstrate at the hearing. Since

6

the pretrial services report was written, Knezevich's accounts have either been drained (to pay for private, legal representation in this case and ancillary services) or frozen. Knezevich has no access to funds. The properties that the government harps on[2] are all heavily mortgaged with balloon payments coming due in 2027. As of this writing, and for the foreseeable future, Knezevich does *not* have access to any amounts of money, and his lack of available assets is inconsistent with being risk of flight.

### 7. The Newly Discovered Evidence Has A Direct Bearing On The Issue Of Risk Of Flight

An overarching theme of the Government's Response is that even if Knezevich did present material, new information (which he has), it does not have any bearing on his risk of flight. This is not accurate. Magistrate Judge Torres' Detention Order properly considered "the weight of evidence" in determining whether Knezevich is a risk of flight. [D.E. 17 at 1-2]. This is consistent with Eleventh Circuit case law on the factors to consider in determining risk of flight. *See U.S. v. Clum*, 492 Fed.Appx. 81, 86 (11th Cir. 2012) ("In determining whether the defendant poses a flight risk, a court must consider several factors, including . . . the weight of the evidence against the defendant . . ."). As to Defendant's risk of flight, the Court has noted that such a risk is directly related to the weight of the evidence. *See United States v. Giordano*, 370 F.Supp.2d 1256, 1266 (S.D. Fla. 2005) citing *United States v. Al-Arian*, 280 F. Supp. 2d 1345, 1358 (M.D. Fla. 2003) (risk of flight is directly related to the weight of the evidence).

WHEREFORE, based on new information materially relevant to the factors considered in ordering detention, Defendant, David Knezevich, respectfully requests that the Court's Order

---

[2] There are 7 properties that were sold as a bundle, which Knezevich does have second mortgages on. These mortgages become due in 2027. The Government submits that there is a way for Knezevich to accelerate that payment. We disagree. However, if that is the Government's argument for detention, there are several ways to prevent those properties from being accessed by Knezevich during the pendency of these proceedings to ameliorate any such concern.

[D.E. 46] granting the re-opening of the detention hearing, pursuant to 18 U.S.C. § 3142(f), scheduled for August 8, 2024, at 3:30 p.m. before Chief Magistrate Judge Torres, remain undisturbed.

Dated: August 7, 2024.

Respectfully Submitted,

| | |
|---|---|
| **By: s/ Jayne C. Weintraub, Esq.** | **By: s/ Bruce A. Zimet, Esq.** |
| Florida Bar No. 320382 | Florida Bar No. 0225053 |
| **SALE & WEINTRAUB, P.A.** | **BRUCE A. ZIMET, P.A.** |
| 2 South Biscayne Blvd. | 1555 Palm Beach Lakes Blvd. |
| One Biscayne Tower – 21st Floor | Suite 1400 |
| Miami, Florida 33131 | West Palm Beach, FL 33401 |
| Tel: (305) 374-1818 | Tel:   (561) 508-7741 |
| Email: JWeintraub@SaleWeintraub.com | Tel:   (954) 764-7081 |
| | Email: BAZ@BruceAZimetLaw.com |

**By: s/ Christopher Cavallo, Esq.**
Florida Bar No. 0092305
**NELSON MULLINS**
2 South Biscayne Blvd.
One Biscayne Tower – 21st Floor
Miami, Florida 33131
Tel: (305) 373-9465
Email: ChrisCavallo@NelsonMullins.com