UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: <u>24-20201-CR-WILLIAMS</u>

UNITED STATES OF AMERICA

vs.

DAVID KNEZEVICH,
    a/k/a "DAVID KNEZEVIC,"
    a/k/a "DUSAN KNEZEVIC,"

    **Defendant.**
_____/

**<u>RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO SET GOVERNMENT DISCOVERY CUTOFF DATE
(NOVEMBER 10, 2024)</u>**

The United States of America, through undersigned counsel, hereby opposes David Knezevich's (the "Defendant') Motion to Set Government Discovery Cutoff Date (November 10, 2024) ("Motion"). *See* (DE 81). For the reasons stated below, the United States respectfully requests that the Court deny the Motion or defer ruling until a later date.

**I.    FACTUAL BACKGROUND**

    **A.    The Charge**

On May 4, 2024, the Defendant was arrested for kidnapping his wife (the "Victim"), in violation of 18 U.S.C. § 1201(a), pursuant to a criminal complaint. *See* Criminal Complaint, Case No. 24-MJ-02896-REID (DE 3). A grand jury sitting in the Southern District of Florida subsequently returned an indictment against the Defendant on the same charge on May 15, 2024. If convicted, the Defendant faces life imprisonment.

**B.     Offense Conduct Summary**

On January 27, 2024, the Defendant departed from Miami International Airport to Belgrade, Serbia.  After landing in Serbia on January 28, 2024, the Defendant immediately initiated his covert journey to Madrid, Spain, where the Victim, who had requested a divorce, had resided for the last two months. On January 29, 2024, the Defendant rented a car in Serbia, tinted its windows, removed two stickers from its exterior, and replaced the license plate with one that he had stolen in Belgrade, Serbia. The Defendant then drove from Serbia to Madrid, Spain, where he replaced the stolen Serbian license plate with one that he stole in Madrid on February 1, 2024. The next day, on February 2, 2024, the Defendant bought spray paint and duct tape from a local Madrid retailer and drove to the Victim's apartment. The Defendant entered the Victim's apartment building by posing as a food delivery driver, spray painted the only surveillance camera in her building, and left the building with an object, believed by law enforcement to be a rolling suitcase carrying the Victim's body. Despite international media coverage of her disappearance, the Victim has never been heard from or seen again, and all evidence known to date indicates that she is deceased.

**C.     Trial Status**

The trial in this case is currently scheduled for February 10, 2025. *See* (DE 78). The trial has been continued twice by agreement of the parties. *See* (DE 39, 77). The reasons cited for the continuances have been, among other things, the voluminous nature of the discovery, outstanding responses to multiple requests under mutual legal assistance treaties, and the apartment viewing. *See id.*

**D.     Discovery Status**

To date, the United States has provided the Defendant with six discovery installments and is currently preparing a seventh installment. The United States has submitted mutual legal assistance treaty requests for foreign evidence to six different countries and is still awaiting responses from two of the countries. The United States is also preparing official supplemental requests to at least three of the countries for information that was not provided in their initial responses, or for information that was discovered after the United States' request was made. One such outstanding request is for authorization from the Spanish government for defense counsel and government counsel to enter the Victim's apartment and apartment building, where the Victim resided at the time that she disappeared. The United States anticipates that it will take a couple of weeks to get the request approved, translated, and submitted to Spain. It is unclear how long the request will take to be approved by the Spanish government, and, if approved, the parties will need to coordinate a time to travel when the Spanish National Police are available to assist.

**II.    ARGUMENT**

The investigation in this case resulted in a reactive arrest on May 4, 2024, just three months after the Defendant's wife (the "Victim") went missing. Since the Defendant's arrest, the United States has worked diligently to provide discovery to defense counsel and to respond to defense counsel's requests for information. However, since the Defendant had contact with at least five different foreign countries during the commission of the kidnapping, obtaining evidence from those countries in a timely fashion, and in a form that can be admitted into a United States courtroom, has been challenging. Congress clearly understood

3

those challenges when it provided courts with a basis to exclude periods of delay under the Speedy Trial Act when a party is seeking evidence from a foreign country:

> Any period of delay, not to exceed one year, ordered by a district court upon an application of a party and a finding by a preponderance of the evidence that an official request, as defined in section 3292 of this title, has been made for evidence of any such offense and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such a foreign country.

18 U.S.C. § 3161(h)(8). An official request is defined in 18 U.S.C. § 3292(d) as a letter rogatory, a request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law responsibility, to a court or other authority of a foreign country." Section 3292 analogously permits courts to suspend the statute of limitations for up to three years before the return of an indictment when the United States makes the necessary showing that evidence of an offense is in a foreign country. *See* 18 U.S.C. § 3292.

Thus far, the United States has not made an application under Section 3161(h)(8) since the parties agreed to continue the trial. However, the United States is prepared to do so, if necessary. Further, the United States is evaluating whether to pursue capital-eligible offenses in this case. Although, the United States cannot predict the exact timing of that decision, undersigned counsel estimates that the decision will be made, at the latest, by early December. If capital-eligible offenses are added to the indictment, the timeline of this case will change dramatically to give the Defendant an opportunity to present any death-mitigation to the United States for consideration in their decision whether to pursue the death penalty, and then prepare for trial once that decision is made.

**III.     CONCLUSION**

For all these reasons, the United States respectfully requests that the Court deny the Defendant's Motion or defer ruling until mid-December so that, should the United States supersede the indictment to add capital-eligible offenses, the Court can set a realistic timeline in this case.  If the United States does not add capital-eligible offenses, the parties will have a better idea of what remains outstanding. If the United States needs additional time at that point, the government can make its application under 18 U.S.C. § 3161(h)(8).

                Respectfully submitted,

                MARKENZY LAPOINTE
                UNITED STATES ATTORNEY

By:   **Jessica Kahn Obenauf**
        Jessica Kahn Obenauf
        Assistant United States Attorney
        Florida Bar No. 0052716
        U.S. Attorney's Office
        99 N.E. 4th Street, Miami, FL 33132-2111
        (305) 961-9317 | jessica.obenauf@usdoj.gov