UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cr-20201-KMW

UNITED STATES OF AMERICA,

v.

DAVID KNEZEVICH,

    Defendant.
_____/

# EXPEDITED MOTION FOR ORDER TEMPORARILY STAYING GOVERNMENT REVIEW OR USE OF SEIZED ELECTRONICS

Defendant, David Knezevich ("Knezevich"), by and through his undersigned counsel, pursuant to Local Rule 7.1(d)(2), respectfully submits this Expedited Motion for Order Temporarily Staying the Government's Review or Use of Seized Electronics, and in support thereof states as follows:

Knezevich's brother ("U.K.") was detained at Miami International Airport on January 7, 2025, along with his wife and two minor children (ages 3 and 5). U.K. and his family were returning to the United States after a family vacation to Spain and Portugal. U.K. and his family are all United States citizens and were traveling with United States passports.

After clearing customs, three border agents detained U.K. and his family for several hours. The border agents told U.K. and his family that they were looking to see if the family had brought a **ham** into the United States from Spain. The border agents searched the family's carry-on bags and backpacks but did not locate a ham. The border agents interrogated U.K. and his wife with numerous questions about where they had traveled and why they had traveled to Spain, in particular. One agent commented on how weird it was the family vacationed in Seville, Spain. Eventually, the border agents permitted U.K.'s wife and minor children to return to the waiting

room. At that time, the border agents obtained and then searched the family's checked luggage in U.K.'s presence. The border agents failed to find a ham or any other item of significance in the checked luggage. The border agents returned U.K. to the waiting room with his family. Soon after, U.K.'s family was permitted to leave, but U.K. was held for over an hour awaiting "processing" and the completion of a "report." When U.K. asked when he would be allowed to leave, and whether it was routine for processing to take so long, one border agent remarked that he had never seen it take so long.

After significant time in the waiting room, U.K. was brought back into the questioning room. Upon his entry into the room, five Homeland Security agents ("HSI agents") walked in. The HSI further interrogated U.K. with the same questions about where his family traveled, the purpose of travel, whether he met with anyone while traveling, and more. The HSI agents told U.K. he was stopped because he was Serbian (contrary to the border agents' suggestion that it was to look for a purported "ham"). The HSI agents asked U.K. questions about Serbia, whether he was aware of current events in Serbia, and whether U.K. had bought any cryptocurrency, which he had not.

The HSI agents then seized U.K.'s electronic devices, including his cell phone and laptop. The HSI agents asked U.K. for his phone passcode, which U.K. refused to provide. The apparent lead HSI agent told U.K. that if U.K. would not provide his phone passcode, HSI would be keeping the phone for "months." When U.K. asked the HSI agent whether he could have his phone back right away if he gave the passcode, the HSI agent said they would still be keeping the phone for several weeks. U.K. then confirmed he would not provide the passcode.

The HSI agents finally allowed U.K. to leave some time after 6pm. In all, U.K. was detained and questioned (on and off) for well over three hours.

In this filing, Knezevich seeks entry of an expedited order prohibiting any Government personnel, including prosecutors and agents, from reviewing, using, or accessing any of the electronic devices seized, until such time as the Court has an opportunity to review and consider the propriety of the Government's seizure, review, and use of the seized electronics.

First, U.K. has been part of the Knezevich defense team from the inception of the case against his brother. There are attorney-client communications and attorney work-product on his electronic devices. Any attempt to open and review the contents of these devices would constitute an invasion of Knezevich's defense team and violation of Knezevich's Fifth and Sixth Amendment constitutional rights. Even if the Government represents that it will utilize a taint team and taint protocols to protect privilege and work product, that would be insufficient under the unique circumstances here, given the nature of the work product in this specific case.[1]

Second, U.K. and his family are all United States citizens who traveled on United States passports. The reason given by border agents for their detention and search (i.e., looking for a ham) was apparently false. Even after the border agents did not find any ham in the family's belongings, they continued to detain U.K. until five (5) HSI agents arrived. The HSI agents questioned U.K. further and seized U.K.'s electronic devices, which the border agents had previously demanded and already returned to him. While courts in this district may allow for detention and searches at the border,[2] it is to prevent contraband from entering the country and to protect national security.

---

[1] For example, given that all the evidence in this case is located abroad, including in Serbia, U.K. contacted potential witnesses in Serbia on behalf of the defense team and relayed information back and forth. *This will not be obvious to any taint team reviewing the content of the seized devices under normal protocols*.

[2] Notably, the conduct at issue here goes far beyond a forensic search *at the border* for contraband. HSI agents seized U.K.'s devices and refused to return them. It is believed the forensic search of these devices will be conducted by Government personnel who are obviously not located at the border, as opposed to border officials while searching for contraband.

*See United States v. Touset*, 890 F.3d 1227, 1232 (11th Cir. 2018) (permitting searches and seizures at the border without probable cause, a search warrant, or suspicion, noting border agents "responsibility for preventing the importation of contraband in a traveler's possession . . .").[3] Nothing in *Touset* or any other Eleventh Circuit case allows the Government to use the border patrol to obtain evidence for a pending criminal case which the Government could not otherwise obtain without a search warrant. To the contrary, the Eleventh Circuit has found that administrative searches (which do not require warrants, like border searches) do not "confer authority on law enforcement to obtain a warrant where the primary purpose" of the search is to obtain criminal evidence. *Bruce v. Beary*, 498 F.3d 1232, 1239-40 (11th Cir. 2007) *citing New York v. Burger*, 482 U.S. 691, at 691, 716 n.27 (1987); *see also United States v. Johnson*, 994 F.2d 740, 742 (10th Cir. 1993) (an administrative inspection is a "sham" where it is "a pretext solely to gather evidence of criminal activity").

Border agents and HSI agents detained, questioned, and seized electronics from U.K. without a warrant or any reasonable suspicion. Based on the facts and circumstances of those events, there is a real and legitimate concern that U.K. may have been stopped, detained, harassed, questioned, or had his electronics seized at the request of Government personnel *in this case*, for the sole purpose of obtaining evidence to be used in the pending criminal case against U.K.'s brother. The defense's concern is strengthened by the Government's failure to deny involvement in the meet and confer correspondence regarding this Expedited Motion on January 8, 2025.

---

[3] Notably, many other Circuits require, at a minimum, reasonable suspicion before a forensic search of electronic devices is permitted. *See, e.g., United States v. Cano*, 934 F.3d 1002, 1015 (9th Cir. 2019) (border officials must have particularized and objective basis for suspecting criminal activity to engage in forensic examination of electronic devices).

If the Government in fact used HSI improperly to secure evidence and information it otherwise could not obtain, that conduct raises serious concerns. That would mean the Government stopped U.K. and his family (or flagged them to be stopped), detained them, or seized U.K.'s electronics under the *pre-text* of searching for contraband, when it really was seeking to obtain additional evidence and *information related to the defense's trial strategy* in a criminal case against U.K.'s brother. This conduct, even if permissible under the broad authority agents are given for border protection, is antithetical to due process and the protections guaranteed by our Constitution. *See, e.g., United States v. Ofshe*, 817 F.2d 1508, 1515 (11th Cir. 1987) (analyzing whether Sixth Amendment violation for intrusion into defense team should result in dismissal of indictment); *United States v. Esformes*, 2018 WL 5919517 (S.D.F.L. 2018) (analyzing whether prosecutorial intrusion into defense camp, which is a Sixth Amendment violation, should result in dismissal of indictment).

## EXPEDITED RELIEF

Knezevich files this Expedited Motion pursuant to Local Rule 7.1(d)(2). Knezevich respectfully requests entry of an expedited order temporarily staying any Government use or review of the seized electronics until such time as the Court can determine the propriety of the Government's use and review of the seized electronics. The requested relief is narrowly crafted and of an expedited nature because if the Government is permitted to review the contents of these items before the Court can address substantive issues, it will be impossible to "un-ring the bell", and Knezevich will suffer irreparable harm, while a temporary stay will result in no prejudice to the Government. Knezevich requests a ruling by January 10, 2025, given concerns that the Government may already be reviewing the electronic devices seized on January 7, 2025.

5

## MEET AND CONFER CERTIFICATION

Pursuant to Local Rule 88.8, undersigned counsel first contacted the Government regarding the foregoing on the night of January 7, 2025. The Government did not respond. On January 8, 2025, undersigned counsel sent the Government a meet and confer email to ascertain its position on the relief sought herein. In response, the Government did not deny that it was involved in U.K.'s detention and seizure. The Government stated that Knezevich does not have standing to seek the return of his brother's devices, and that, as to privilege concerns, the Government has protocols to handle those concerns. For those reasons, the Government objected to the relief sought in this Expedited Motion.

Later that same day, on January 8, 2025, undersigned counsel sent a second email to the Government stating that it was hesitant to file a motion for emergency relief under Local Rule 7.1(d)(1) given strict standards under that Rule, but that it may be required to do so if the Government would not agree to abstain from reviewing the contents of the seized devices until the Court had an opportunity to determine the propriety of the Government's review of those devices. The Government responded that it did not agree and claimed again there are protocols in place to address this type of situation. Knezevich files this Expedited Motion given the Government's refusal to abstain from reviewing the devices pending Court order, given the defense's concern that if the Government reviews information it is not entitled to possess, the proverbial bell will not be able to be un-rung, causing irreparable harm to Knezevich.

WHEREFORE, undersigned counsel respectfully requests entry of an expedited order by January 10, 2025: (1) prohibiting the Government, including all prosecutors and agents, from reviewing, using, or accessing any of the electronic devices seized from U.K. on January 7, 2025, pending further order; and (2) setting a hearing to determine whether the Government trial team *in*

*this case* was involved in U.K.'s border stop and seizure, and propriety of the Government's review and use of U.K.'s seized electronics.

| Respectfully Submitted, | Dated: January 9, 2025. |
|---|---|
| **By: s/ Jayne C. Weintraub, Esq.** | **By: s/ Bruce A. Zimet, Esq.** |
| Florida Bar No. 320382 | Florida Bar No. 0225053 |
| **SALE & WEINTRAUB, P.A.** | **BRUCE A. ZIMET, P.A.** |
| 2 South Biscayne Blvd. | 1555 Palm Beach Lakes Blvd., Suite 1400 |
| One Biscayne Tower – 21st Floor | West Palm Beach, FL 33401 |
| Miami, Florida 33131 | Tel:    (561) 508-7741 |
| Tel: (305) 374-1818 | Tel:    (954) 764-7081 |
| Email: JWeintraub@SaleWeintraub.com | Email: BAZ@BruceAZimetLaw.com |

**By: s/ Christopher Cavallo, Esq.**
Florida Bar No. 0092305
**NELSON MULLINS**
2 South Biscayne Blvd.
One Biscayne Tower – 21st Floor
Miami, Florida 33131
Tel: (305) 373-9465
Email: Chris.Cavallo@NelsonMullins.com