UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: <u>24-20201-CR-WILLIAMS(s)</u>

UNITED STATES OF AMERICA

vs.

DAVID KNEZEVICH,
    a/k/a "DAVID KNEZEVIC,"
    a/k/a "DUSAN KNEZEVIC,"

        **Defendant.**
_____/

## UNITED STATES' RESPONSE TO DEFENDANT'S EXPEDITED MOTION FOR ORDER TEMPORARILY STAYING REVIEW OR USE OF SEIZED ELECTRONICS

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby files its response to the Defendant's Expedited Motion for Order Temporarily Staying Review or Use of Seized Electronics (the "Motion). *See* (DE 133). The Court should deny the Motion because the Defendant's brother Ugljesa Knezevich (the "Defendant's brother") was subjected to a lawful border search, a pre-execution challenge to a Fourth Amendment search is not procedurally proper, and even if it were, the Defendant doesn't have standing to contest the search of his brother's electronic devices. Further, any concerns that the Defendant has about the exposure of the Government's trial team to attorney client communications or privileged work product will be addressed through the use of a filter team.

On January 7, 2025, the Defendant's brother arrived at Miami International Airport after traveling to Portugal and Spain. The Defendant's brother's cell phone and laptop computer were detained by Homeland Security Investigations ("HSI") pursuant to their border search authority. Thereafter, the Federal Bureau of Investigation ("FBI") obtained a

sealed federal search warrant for the devices. The Government declines to divulge anything additional, as the search warrant was obtained in connection with an ongoing criminal investigation. *See Fed. Election Comm'n v. Rivera*, 335 F.R.D. 541, 547 (S.D. Fla. 2020) ("The qualified law enforcement investigatory privilege protects from disclosure files and reports of criminal *and* civil law enforcement investigations") (citations omitted); *In re Polypropylene Carpet Antitrust Litig.,* 181 F.R.D. 680, 687 (N.D. Ga. 1998) ("The purpose of the privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation") (citation and internal quotations omitted); *In re U.S. Dep't of Homeland Security,* 459 F.3d 565, 569-70 (5th Cir. 2006) (holding district court erred in refusing to recognize law enforcement privilege—which protects "investigative files in an ongoing criminal investigation"); *United States v. Van Horn,* 789 F.2d 1492, 1508 (11th Cir. 1986) (applying a qualified privilege not to disclose the location of electronic surveillance equipment). If the Court requires additional information about the Government's investigation to resolve the Motion, undersigned counsel respectfully requests that the Court permit the Government to provide such information both *ex parte* and under seal.

### I. The Defendant's Claim That His Brother's Border Search Was Pretextual Is Irrelevant And Unpersuasive

Border searches are a longstanding exception to the Fourth Amendment's warrant requirement. As explained by the Supreme Court in *United States v. Ramsey*:

> **Border searches, from before the adoption of the Fourth Amendment, have been considered to be "reasonable" by the single fact that the person or item in question had entered into our country from outside.** There has never been any additional requirement that the reasonableness of a border search depended on the existence of probable cause. This longstanding recognition that searches

2

> at our borders without probable cause and without a warrant are nonetheless "reasonable" has a history as old as the Fourth Amendment itself.

431 U.S. 606, 619 (1977) (emphasis added). The Eleventh Circuit has similarly explained that, at the border, routine "pat-down search[es] or frisk[s]" and searches of items such as "[a] traveler's luggage," are all reasonable "without any level of suspicion." *United States v. Alfaro-Moncada*, 607 F.3d 720, 729 (11th Cir. 2010). Only "highly intrusive searches of a person's body such as a strip search or an x-ray examination" require reasonable suspicion. *Id.* Indeed, even after the Supreme Court's ruling in *Riley v. California*, 573 U.S. 373 (2014), which imposed a warrant requirement to search cell phones seized incident to arrest, the Eleventh Circuit has held that neither reasonable suspicion nor probable cause is required for manual or forensic searches of electronic devices, such as cell phones. *United States v. Touset*, 890 F.3d 1227, 1233 (11th Cir. 2018) ("We see no reason why the Fourth Amendment would require suspicion for a forensic search of an electronic device when it imposes no such requirement for a search of other personal property.").

The Defendant essentially argues that law enforcement pretext invalidates the Government's border search authority. *See* (DE 133, p. 4). The Second Circuit addressed this issue in *United States v. Irving*, 452 F.3d 110 (2d Cir. 2006). Specifically, in *Irving*, the defendant moved to suppress statements made to and evidence obtained by federal agents during a routine border search, arguing that the search took place as a pretext to obtain information related to a criminal investigation involving the defendant. *Id.* at 115. The Second Circuit rejected this argument, finding that "[i]n the case of searches at airports, it would make little sense to allow random searches of any incoming passenger, without reasonable suspicion, but require reasonable suspicion for searches of passengers that are suspected of criminal activity." *Id.* at 123 (citations omitted). "From this we reason that the validity of a border

3

search does not depend on whether it is prompted by a criminal investigative motive." *Id.; see also United States v. Vallerius*, No. 17-CR-20648-SCOLA, 2018 WL 2325729, at *7 (S.D. Fla. May 1, 2018) (denying a motion to suppress evidence that was obtained from the defendant's computer during a border search, despite the defendant arguing that the border search was an effort to obtain evidence related to a narcotics investigation) ("Based on *Irving*, and in light of the Government's interest in controlling the nation's borders, it stands to reason that a search of an individual's belongings at an airport is unaffected by the fact that the search is prompted by other law enforcement agents or an investigative motive.") (*citing United States v. Schoor*, 597 F.2d 1303, 1306 (9th Cir. 1979) (Kennedy, J.) ("That the search was made at the request of the DEA officers does not detract from its legitimacy.")).

    II.    **A Pre-Execution Challenge To A Fourth Amendment Search Is Procedurally Improper**

The Defendant's request to determine the propriety of the search prior to any Government review or access of the electronic devices is foreclosed by Supreme Court precedent, which has explained that "[t]he Constitution protects property owners not by giving them license to engage in the police in a debate over the basis for the warrant," but instead "by interposing, *ex ante*, the deliberate, impartial judgment of a judicial officer … between the citizen and the police" and then "providing, *ex post*, a right to suppress evidence improperly obtained and a cause of action for damages." *United States v. Grubbs*, 547 U.S. 90, 99 (2006) (citations omitted); *see also, e.g., Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (Fourth Amendment challenges are limited to "two discrete, post-enforcement settings: (1) a motion to suppress in a criminal case or (2) a damages claim under [civil actions]"). In *Warshak*, the Sixth Circuit explained that "a pre-enforcement challenge" to future searches provides no factual context and noted that the "Fourth Amendment is designed to account

4

for an unpredictable and limitless range of factual circumstances, and accordingly it generally should be applied *after* those circumstances unfold, *not before*." *Id.* (emphasis added); *see also In re Search of Elec. Commc'ns in the Acct. of chakafattah@gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 528 (3d Cir. 2015) ("A subpoena, of course, may be challenged prior to compliance. In stark contrast, a search warrant is properly challenged after it is executed.").

In fact, Federal Rule of Criminal Procedure 41, which governs search warrants, "only allows for a motion to suppress evidence." *United States v. Crumpton*, No. 3:22-CR00012, 2023 WL 3611554, at *2 (M.D. Ga. May 23, 2023) (citing Fed R. Crim. P. 41(h) and pointing out, in an order denying a motion to quash an already-issued DNA warrant, that "numerous courts have concluded that individuals do not have standing to challenge a warrant before it is executed"); *see also Carpenter v. United States*, 138 S. Ct. 2206, 2228 (2018) (Kennedy, J., dissenting) ("recognizing the differences between subpoenas and search warrants, including that a subpoena provides 'the recipient the opportunity to present objections before complying, which is why subpoenas 'need not comply with the procedures applicable to warrants'")).

Therefore, allowing the Defendant to contest the validity of the search of his brother's electronic devices would "lead to impractical and illogical results," unsupported by precedent. *See In Re Search Warrant*, Criminal Case Number 24-MJ-02376-GOODMAN, 2024 WL 1174726, at *4 (March 18, 2024) (denying defendant's motion to quash DNA search warrant pre-execution as procedurally improper, noting that Fourth Amendment challenges are properly made after a search is executed). As United States Magistrate Judge Jonathan Goodman correctly observed,

if the subjects of search warrants … could automatically interfere with search

5

>       warrants by moving to quash them *before* they were executed, then law enforcement investigations would be significantly compromised. Moreover, prosecutors' offices would need to expand their staff in order to address the inevitable onslaught of challenges to warrants pursued by targets and/or subjects.

*Id.* at *4.

### III. The Defendant Has No Standing To Challenge The Search Of His Brother's Electronic Devices

Even if it were procedurally proper for the Defendant to contest the search of his brother's electronic devices at this juncture, he doesn't have standing to do so. As a general matter, "[a] defendant has standing to challenge a warrantless search if the defendant had a 'legitimate expectation of privacy' in the property when it was searched." *United States v. Gibson*, 708 F.3d 1256, 1276 (11th Cir. 2013) (quoting *Rakas v. Illinois*, 99 S. Ct. 421 (1978)). In *Riley v. California*, the Supreme Court found that a defendant has an expectation of privacy in his personal cellphone contents. 573 U.S. 373, 403 (2014). However, a defendant "has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979). A defendant therefore cannot benefit from an unconstitutional search of a third party. *See United States v. Tercier*, 835 F. App'x 471, 481 (11th Cir. 2020) (holding that the defendant did not have standing to challenge the search of a third party's cellphone); *Rawlings v. Kentucky*, 448 U.S. 98, 103–06 (1980) (holding that the defendant could not benefit from the unconstitutional search of another person's purse); *United States v. Salvucci*, 448 U.S. 83, 84–85 (1980) (holding that the defendant could not benefit from the unconstitutional search of the apartment of his co-defendant's mother); *United States v. Brown*, 743 F.2d 1505, 1507–08 (11th Cir. 1984) (holding that the defendant did not have an expectation of privacy in the person of his co-defendant, who personally carried drugs).

### IV. The United States Will Institute A Filter Protocol To Address The Defendant's Concerns Regarding Potentially Privileged Information

The Defendant objects to a search of his brother's electronic devices because he claims that the devices contain attorney-client communications and attorney work-product. *See* (DE 133, p. 3.). Although the Government does not concede that the Defendant's brother is a member of the defense team, or that his devices contain attorney-client communications or work product privilege, to address the Defendant's concerns, the Government will implement a filter protocol to segregate any potentially privileged communications from the trial team until a privilege determination is made.

### V. Conclusion

Wherefore, the United States respectfully requests that the Defendant's Expedited Motion for Order Temporarily Staying Review or Use of Seized Electronics be denied.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

**Jessica Kahn Obenauf**
Jessica Kahn Obenauf
Assistant United States Attorney
Florida Bar No. 0052716
U.S. Attorney's Office
101 S. U.S. Hwy 1, Suite 3100
(772) 293-0981 | Jessica.Obenauf@usdoj.gov

**Lacee Elizabeth Monk**
Lacee Elizabeth Monk
Assistant United States Attorney
Florida Bar No. 100322
U.S. Attorney's Office
99 N.E. 4th Street, Miami, FL 33132-2111
(305) 961-9427 | Lacee.Monk@usdoj.gov