## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.  ___25mj02063 Goodman___

**IN RE: SEARCH WARRANT**

_____/

## SEARCH WARRANT COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?  No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?  No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  No

4. Did this matter involve the participation of or consultation now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024?  No

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:  **Lacee Elizabeth Monk**
Lacee Elizabeth Monk
Assistant United States Attorney
Florida Bar No. 100322
U.S. Attorney's Office
99 N.E. 4th Street, Miami, FL 33132-2111
(305) 961-9427| Lacee.Monk@usdoj.gov

24-20201-CR-WILLIAMS(s), UNITED STATES' SEALED EX PARTE NOTICE OF FILING SEARCH WARRANT, GOVERNMENT'S EXHIBIT 1

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One Google Pixel Cell Phone and One HP Laptop Computer,<br>in the custody of Homeland Security Investigations,<br>as more fully described in Attachment A. | )<br>)<br>)<br>)<br>)<br>) |

Case No. 25mj02063 Goodman

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Southern _____ District of _____ Florida _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1119, 2, 3, 1519,<br>1028, 1343, 1349, and 1344. | Foreign Murder of a United States National, Aiding and Abetting, Accessory after the Fact,<br>Destruction, Alteration, or Falsification of Records in Federal Investigations, Wire Fraud,<br>Attempt/Conspiracy to Commit Wire Fraud, and Bank Fraud. |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

**Emma Pittz, Special Agent FBI**
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ Face Time _____ *(specify reliable electronic means).*

Date: _____ 1/10/2025 _____

*Judge's signature*

City and state: **Miami, Florida**

**Honorable Jonathan Goodman, United States Chief Magistrate Judge**
*Printed name and title*

24-20201-CR-WILLIAMS(s), UNITED STATES' SEALED EX PARTE NOTICE OF FILING SEARCH WARRANT, GOVERNMENT'S EXHIBIT 1

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Emma Pittz, being first duly sworn, hereby depose and state as follows:

### AFFIANT'S BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been employed with the FBI since September 2022.   I am currently assigned to the FBI's Miami Division in the Extraterritorial Violent Crimes Squad.   In this capacity, I investigate violations of federal criminal law, specializing in criminal matters pertaining to U.S. extraterritorial jurisdiction. By virtue of my employment, I perform and have performed a variety of investigative tasks and have received training in conducting criminal investigations. I have also received training and gained experience in interviewing and interrogation techniques, the execution of federal search warrants and seizures, and the identification and collection of controlled substances, and computer and cellphone-related evidence. In addition, I have personally participated in the execution of federal search warrants involving the search and seizure of computer equipment, cellphones, and narcotics.

2.      As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

3.      This Affidavit is made pursuant to Rule 41 of the Federal Rules of Criminal Procedure in support of an application for a search warrant authorizing the search of one Google Pixel cell phone ("**TARGET DEVICE 1**") and one HP laptop computer ("**TARGET DEVICE 2**") (collectively, the "**TARGET DEVICES**"), as more fully described in Attachment A.

1

4.     The **TARGET DEVICES** were detained by Homeland Security Investigations ("HSI") pursuant to its border search authority on January 7, 2025, after Ugljesa Knezevich ("Ugljesa") (D.O.B. 2/27/1990) arrived at the Miami International Airport.   Ugljesa arrived at the airport on a flight from Lisbon, Portugal via Sevilla, Spain.   During Ugljesa's secondary inspection, he advised that he was in possession of a cell phone and laptop, the **TARGET DEVICES**.   Ugljesa also advised that his phone number was (786) 514-0370, which is the phone number that law enforcement used to communicate with Ugljesa in 2024.   **TARGET DEVICE 1** was in Ugljesa's personal possession, and **TARGET DEVICE 2** was in Ugljesa's backpack. The **TARGET DEVICES** are currently in the custody of HSI in Miami, Florida.

5.     Ugljesa is the brother of David Knezevich, a/k/a David Knezevic, a/k/a Dusan Knezevic ("David").   David was arrested in this District on May 4, 2024, for kidnapping his wife in Madrid, Spain, and subsequently detained pending trial.   *See* Criminal Complaint, Case No. 24-MJ-02896-REID.   He was subsequently charged by the grand jury with Kidnapping Resulting in Death, in violation of 18 U.S.C. § 1201(a)(1), Foreign Domestic Violence Resulting in Death, in violation of 18 U.S.C. §  2261(a)(1), and Foreign Murder of a United States National, in violation 18 U.S.C. § 1119(b).   *See* Superseding Indictment, Case No. 24-CR-20201-WILLIAMS.

6.     The information set forth in this Affidavit comes from my personal observations and training and experience, as well as from other law enforcement personnel and witnesses.   This Affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

7.     Based on the information set forth in this Affidavit, there is probable cause to believe that the **TARGET DEVICES** will contain fruits, instrumentalities, and evidence of

violations of Title 18, United States Code, Sections 1119 and 2 (foreign murder of a United States national), 3 (accessory after the fact), 1519 (destruction, alteration, or falsification of records in federal investigations), 1028 (access device fraud), 1343 (wire fraud), 1349 (attempt/conspiracy to commit wire fraud), and 1344 (bank fraud) (collectively, the **"TARGET OFFENSES"**).

## FACTUAL BACKGROUND

### *DAVID KNEZEVICH'S CRIMES AGAINST THE VICTIM*

8.     On or about December 26, 2023, the Victim traveled from Miami International Airport in the Southern District of Florida in the United States to Madrid, Spain.

9.     Thereafter, the Victim's friends and family, who had previously communicated with her while she was in Spain, lost contact with her. Specifically, on February 3, 2024, two of the Victim's friends received concerning messages from the Victim's cell phone number. Specifically, the first friend ("Acquaintance 1"), received two messages from the Victim's cell phone number on February 3, 2024, at approximately 2:03 to 2:04 p.m. (UTC +1):

| Victim's Phone: | I met someone wonderful! He has a summer house about 2h from Madrid.   We are going there now and I will spend a few days there. Signal is spotty.   I'll call you when I get back. |
| --- | --- |
| Victim's Phone: | Yesterday after therapy I needed a walk and he approached me on the street! Amazing connection.   Like I never had before. |

A second friend ("Acquaintance 2") received a similar message in Spanish on the same day at approximately 4:16 p.m. (UTC +1):

| Victim's Phone: | I met a real nice person.   He has a vacation home 2h from Madrid. We are leaving now and I'll be staying there a couple of days. There is hardly any signal there.   I will call you when I get back [emoji][.][1] |
| --- | --- |

---

[1] The undersigned has received screenshots of the aforementioned messages from Acquaintance 1 and Acquaintance 2.   The message received by Acquaintance 2 was received in Spanish and was translated for this Affidavit.

10.     Additionally, prior to her disappearance, the Victim and some friends had planned a trip that the Victim subsequently failed to show up for.   The last (non-automatic) activities on the Victim's J.P. Morgan Chase bank account[2] were for a flower purchase February 2, 2024 (the last date she was seen alive), as well as a charge from a restaurant in Madrid on or about February 10, 2024, for failing to show up to a dinner reservation.   To date, neither the Victim's friends or family have received any calls or messages from her, nor has she been seen.

11.     At the time of her disappearance, the Victim was married to David, a Yugoslavian-born naturalized citizen of the United States.   According to the Victim's friends and family, the Victim and David were separated and planned to divorce.   The separation was contentious because David did not want to split the marital assets evenly with the Victim.   The Victim was very fearful of David and believed that he was surreptitiously monitoring her whereabouts. Additionally, I know based upon my investigation that the Victim wanted to divorce David in December 2023 after he left her alone on the street in Serbia after a dispute.

12.     The investigation to date surrounding the Victim's disappearance has revealed that on February 2, 2024, security cameras at the Victim's apartment building captured her entering the building around 1:42 p.m.   This is the last time the Victim was seen alive.   Later that evening, at approximately 9:27 p.m., the building's surveillance camera captured a male wearing a helmet and mouth covering enter the building when some individuals were exiting.   Once inside the building, the male is captured descending the stairs while holding a can of spray paint, which he then used to disable a surveillance camera by painting the lens.   Notably, when spray painting the camera, the male – whose physical characteristics resembled those of David–looked directly at the

---

[2]  In prior affidavits, this bank account was referred to as a Bank of America account.

4

camera.   When looking at the camera, the male's eyes, eyebrows, and the bridge of his nose, along with his body, are visible.

13.     Immediately after spray painting the camera, the lens was not completely obscured, and the male is seen returning to the front door where he remains for a brief period of time and appears to fasten a piece of duct tape to the lock of the building entrance to prevent the lock from engaging to allow subsequent entry.   The male then exited the building.

14.     Thereafter, the male reentered the building.   At the time the male reentered the building, the paint on the camera lens had dried, further obscuring the camera lens.   Nevertheless, the male was identifiable by his reflective vest.   The male immediately entered the elevator with an object trailing behind him.   Shortly thereafter, the male is captured exiting the elevator with what appears to be the same object trailing behind him.   Law enforcement believes the object is a rolling suitcase based on its proximity to the male, its size, and the rolling movement the item appears to make while trailing behind the male coming in and out of elevator.

15.     On or about February 4, 2024, Spanish firefighters entered the Victim's apartment for a welfare check and discovered that she was not in her apartment.   Subsequently, Spanish law enforcement searched the Victim's apartment pursuant to a Judge's order and discovered that the Victim's cell phone, laptop computer, and respective chargers were missing.

16.     Based on surveillance footage, Spanish law enforcement was able to identify the brand of spray paint used to disable the security camera.   Law enforcement then determined that a retailer in Madrid had a recorded sale of that particular brand of spray paint on February 2, 2024. Surveillance footage from the retailer depicted an individual who appeared to be David purchasing the spray paint along with two rolls of duct tape on February 2, 2024, around noon.   While in the hardware store, David is not wearing a hat or any type of facial covering, and his face is clearly

5

visible.   Additionally, David is wearing black pants that resemble those worn by the male who spray painted the surveillance camera in the Victim's apartment building.

17.     Additionally, a Colombian woman who met David on Tinder in October 2023 ("Individual 1") advised law enforcement that on February 3, 2024 (the day after the Victim is last seen alive), David contacted her via WhatsApp[3] and asked her for help in translating a message into "perfect Colombian" for a friend in Serbia who is writing a script about a Colombian character. David explained that he wants the writing to sound authentic.[4]   Specifically, David and Individual 1 engage in the following dialogue, which Individual 1 provided to law enforcement:

| | |
|---|---|
| David: | Hey babe |
| David: | I need your help |
| Individual 1: | *Hello, babe[5]* |
| Individual 1: | *Of course! Tell me* |
| David: | I have a friend in Serbia who is a writer. |
| David: | She has a small character who is Colombian! |
| David: | She has few sentences |
| David: | That have to be translated from Serbian/English to Colombian Spanish |
| David: | Like how Colombian girl would speak |
| David: | Rola |
| David: | Haha |
| David: | Are you able to translate what I give you in English into perfect Colombian? |
| Individual 1: | *Ohh, babe, well, you know I don't speak English... I would have to rely on the translator* |

---

[3] WhatsApp is an encrypted messaging application that is typically utilized by its user through a mobile device.

[4] Notably, the Victim was born in Colombia and later became a U.S. citizen in 2009.

[5] Italicized text originally appeared in Spanish and has been translated for this Affidavit.

| | |
|---|---|
| Individual 1: | *And I would create rolas sentences based on context* |
| David: | Yes. You would see it translated and then fix it. |
| David: | "I met someone wonderful. He has a summer house about 2h from Madrid. We are going there now and I will spend a few days there. There is barely any signal though. I'll call you when I come back. Kisses." |
| David: | What do you think? |
| Individual 1: | *Do I fix this paragraph?* |
| David: | Yes |
| Individual 1: | *"I met someone wonderful. He has a summer house about 2h from Madrid. We are going there now and I will spend a few days there. There is barely any signal though. I'll call you when I come back. Kisses."* |
| David: | I can't verify that haha. Do you think it comes across normally? |
| Individual 1: | *Yes ..that's how a rolo would speak* |
| Individual 1: | *Is that all?* |
| David: | Wait no |
| David: | She is a girl! |
| David: | Rola |
| Individual 1: | *Haha, yesss.* |
| David: | So did you write it as a boy or as a girl? |
| Individual 1: | *Well the paragraph is general ... it's not written in the first person* |
| David: | *One more!* |
| David: | *Yesterday after therapy I needed a walk and he approached me on the street! Amazing connection. Like I never had before.* |
| David: | Yesterday after therapy I needed a walk and he approached me on the street! Amazing connection. Like I never had before. |
| Individual 1: | *That's incomplete ... because who approached her on the street?* |
| Individual 1: | *If I do it literally like you are sending it to me, it would be like this* |
| Individual 1: | *Yesterday I needed a walk after leaving therapy and xxxx approached me on street, there was an incredible connection that we hadn't had before* |

7

| | |
|---|---|
| David: | A man approached a women from the previous paragraph |
| David: | Approached her on the street |
| David: | Like if you walk down the street and I see you and come to you and start hitting on you linda |
| David: | [blank message] |
| Individual 1: | *Yesterday I went for a walk after leaving therapy and a man approached me to flirt and we had an incredible connection.* |
| David: | *Thanks gorgeous* |
| Individual 1: | *Don't mention it handsome* |
| Individual 1: | *I hope it helps* |
| David: | It helps my friend. : ) |

18.     Thereafter, David shared a photo with Individual 1 of a plane ticket he purchased on February 16, 2024, for a flight from Serbia to Bogota scheduled to arrive on February 19, 2024. However, David never boarded the flight.

19.     At some point during Individual 1's communications with David, Individual 1 told her mother about having met a Serbian man online. Wanting to know more about the individual, Individual 1's mother "Googled" Knezevich and learned that his wife had been reported missing in Madrid.    Individual 1 then discovered a news article that contained a message purportedly from David's wife that matched the exact wording of the text she and David had put together on or about February 3, 2024.[6]

---

[6] For example, a Google search for Knezevich yielded the following articles, which all reference the sentences David purportedly needed translated for his Serbian friend.    *See* Kinsey Crowley, *A Florida Woman is missing in Spain after bizarre occurrences. Her loved ones want answers.*, USA TODAY, Feb. 19, 2024, https://www.usatoday.com/story/news/nation/2024/02/19/ana-maria-knezevic-missing-david-knezevic-unknown-location/72656841007/; *see also Fort Lauderdale businesswoman disappears in Spain after helmeted man disables cameras*, CBS NEWS, February 19, 2024, https://www.cbsnews.com/miami/news/american-woman-goes-missing-in-madrid-after-helmeted-man-disables-cameras-2/

20.     A review of records from Customs and Border Protection revealed that on or about January 27, 2024, David traveled by airplane from Miami International Airport in the Southern District of Florida, to Istanbul, Turkey.   Law enforcement is aware that David then flew from Istanbul to Belgrade, Serbia. David landed in Belgrade on January 28, 2024. Thereafter, David traveled out of Serbia by motor vehicle on or about January 30, 2024, and returned to Belgrade, Serbia, by motor vehicle on or about February 5, 2024.   Per Google maps, by motor vehicle, it takes approximately 26 hours to travel from Belgrade, Serbia, to Madrid, Spain at a distance of 2,592 kilometers.

21.     Law enforcement's investigation revealed that David rented a Peugeot 308 in Serbia from approximately on or about January 29, 2024, through approximately on or about March 15, 2024. The owner of the rental car agency informed law enforcement that, when David returned the vehicle, the rental agency discovered that the windows had been tinted, the license plate frames had changed, and two stickers had been removed from the vehicle.   The vehicle had traveled approximately 7,677 kilometers while rented by David.

22.     Law enforcement's investigation revealed that, around the relevant time, an individual filed a complaint that both his license plates were stolen off his vehicle in Spain. Spanish authorities ran a search in their plate reader database for the stolen plate and learned that the stolen plate was present on Calle Francisco Sivela, the street where the Victim's apartment was located.

23.     Additionally, the stolen plate also passed through two toll booths in the middle of the night on February 2, 2024, into February 3, 2024. Video from the toll booths revealed that the plates were attached to a Peugeot 308 with tinted windows, which is the type of vehicle David rented in Serbia. Because of the tint, the driver is not visible.   One of the toll booths is in Ajalvir,

9

Spain, which is just outside of Madrid.

24.     Law enforcement has also learned that, on or about March 4, 2024, a woman purporting to be the Victim (the "Caller") contacted an insurance carrier for the purpose of cancelling three insurance policies held by the Victim for her and David's business.   The insurance policies related to vehicles that were used by the business.   During the call, children could be heard in the background speaking to the Caller.   The Victim does not have any children. Moreover, law enforcement learned, pursuant to a subpoena return, that the phone number utilized by the Caller was owned by David's company and David is listed as the contact for the phone number.

25.     Moreover, on or about April 24, 2024, an employee of David ("Employee 1") advised law enforcement that David instructed Employee 1 to impersonate the Victim in order to change[7] the bank account receiving deposits for one of David and the Victim's businesses. To do so, David provided Employee 1 with the Victim's social security number to use as proof that she was the Victim.   Thereafter, on or about April 26, 2024, Employee 1 advised David during a telephone call that she was uncomfortable impersonating the Victim because the Victim was missing.   In response, David told Employee 1 that this was not serious and told Employee 1 it needed to be done in order for the employees to be paid.   David further stated, "I cannot call with my voice because I sound like a guy." Law enforcement later learned that Employee 1 was the Caller who had contacted the insurance company purporting to be the Victim.

### *UGLJESA KNEZEVICH'S INVOLVEMENT IN THE INSTANT CASE*

26.     On or about March 8, 2024, FBI agents spoke with Ugljesa at his home about the

---

[7] Prior affidavits indicate that David instructed the employee to open a new bank account rather than change the bank account receiving deposits.

Victim's disappearance.   During this contact, Ugljesa advised that he was estranged from David and only spoke to him recently upon learning that the Victim was missing from the Victim's brother.   Ugljesa advised that he had to call his mother to get David's phone number. Nevertheless, on May 7, 2024, after David was arrested, the first person that David contacted while in custody was Ugljesa.   During this call, David alluded to having recent conversations with Ugljesa regarding the different outcomes of his arrest.   David instructed Ugljesa to relay messages to his family about their recent conversations, stating "talk to Vanja about the same things you and I spoke about."

27.    Additionally, while in custody, David has regularly corresponded with Ugljesa via Ugljesa's email address montekristo27@gmail.com.   In multiple emails, David instructed Ugljesa to send money to multiple inmates.   For example, on or about May 24, 2024, David sent an email to Ugljesa with the following:

> Stefan Nagy - 12461-506 = 147
> Jose Pineda - 59098-510 = 276
> Appleton Lewis - 80827-198 = 276
> Jose A Valencia - 94387-004 = 439
> Uver Garcia - 12342-506 = 295[.]

I have confirmed through the Bureau of Prisons website that the names and numbers described in paragraphs 27 through 30 are the names and inmate numbers of individuals who have been in federal custody during the pendency of this case.

28.    On or about May 28, 2024, Ugljesa sent David an email with the following:

> *Appleton is not correct information*[8]
> *Jose Valencia can only $300 and is not correct information.*
> *Uver Garcia the same thing.*
> *He cannot find them, as if the number does not exist.*

---

[8] The italicized text in this paragraph has been translated from Serbian to English for this Affidavit.

11

24-20201-CR-WILLIAMS(s), UNITED STATES' SEALED EX PARTE NOTICE OF FILING SEARCH WARRANT, GOVERNMENT'S EXHIBIT 1

*Check and let me know.*
*These two are the first to get money within 2 hours*[.]

29.     In response, on May 28, 2024, David sent an email with the following to Ugljesa:

*Surname first name (surname has a hyphen)*[9]
Appleton-Lewis Lucio
Valencia-Garcia Jose (*pay as much as possible*)
Garcia-Marquez Uver[.]

30.     Western Union records reveal that on May 28, 2024, Ugljesa sent money to the commissary accounts of multiple inmates: $276 to Lucio Appleton-Luis (BOP Number 80827-198); $276 to Jose Luis Pineda (BOP Number 59098-510) and $147 to Stefan Lee Nagy (BOP Number 12461-506).   The following day, Ugljesa sent $295 to the commissary about of Uver Angel Garcia Marquez (BOP Number 12342-506).

31.     On or about June 24, 2024, David sent an email with the following, again instructing Uglejsa to send money to various inmates:

       Zuluga Lopez 12341506 (ref: 12341506) - 125
       Lucio Appleton-Lewis 80827198 - 125
       Me 300[.]

Western Union records reveal that on June 25, 2024, Ugljesa sent $125 to the commissary account of Lucio Appleton-Luis (BOP Number 80827-198), and $300 to the commissary account of David.

32.     In my training and experience, I know that inmates often send money to one another for a variety of criminal reasons, including to obtain contraband, i.e., cell phones to prevent law enforcement from reviewing their telephonic communications; use inmates' phone accounts so that the paying inmate's phone calls are more difficult to monitor; and employ other inmates to

---

[9] The hyphenated text in this paragraph has been translated from Serbian to English for this Affidavit.

12

tamper with witnesses and evidence in the paying inmate's case.   Here, given that David had no criminal history prior to his arrest in the instant case, it is highly unlikely that he knew all, much less any, of the inmates referenced above prior to his arrest.   Accordingly, based on my training and experience, I believe that Ugljesa is paying inmates on David's behalf to conceal his communications to Ugljesa and others, through one of the methods above.

33.     Similarly, in June 2024, the month following David's arrest in this case, law enforcement searched David and Ugljesa's parents' home for evidence related to the Victim's disappearance. The search occurred after law enforcement learned that David's landlord for his Serbian apartment had turned over property, including a laptop, that David had left behind in the apartment to his parents.   During the search, law enforcement viewed Facebook messages in David and Ugljesa's mother's iPad from Ugljesa that were indicative of the destruction of evidence.   On or about May 30, 2024, Ugljesa sent his mother a message asking, "can you turn on his comp?"   On or about June 1, 2024,   Ugljesa sent a message stating, "[G]ood morning, can you turn on the computer?" His mother responded, "right away[.]" In response, Ugljesa stated, "[I]'m done, the computer is empty just put it to charge[.]"[10] In my training and experience, and after consultation with other agents with experience in computer forensics, I am aware that software and programs are available that allow an individual to remote wipe or delete all stored data across numerous device platforms, such as laptops, tablets, or cellular devices.

34.     The timing and content of these messages coupled with the fact that the laptop from David's Serbian apartment has never been recovered, despite it being present in David's apartment prior to his arrest in the United States and subsequently turned over to his parents, leads law

---

[10] The messages in this paragraph were appeared in Croatian and were translated into English for this affidavit.

enforcement to conclude that Ugljesa and his mother disposed of evidence in this case and used Facebook to discuss doing so.

35.     Additionally, in June 2024, Ugjlesa was added as an authorized user to one of the Victim's corporate American Express accounts and received a card for use.   The same month, in a series of recorded phone calls, a male who identified himself as "Ugljesa Knezevich" called American Express to activate the card and later to make payments on the card.   During these calls, the caller provided personally identifiable information for Ugljesa, David, and the Victim for identity verification purposes, including the complete social security numbers of Ugljesa and David, and the last four digits of the Victim's social security number.   In multiple calls, the representative for American Express asked the caller to put David or the Victim on the line.   In one particular call, the caller agreed and then appeared to alter his own voice in an effort to sound as if he was the Victim during various points of the call.   Given that the Victim's friends and family have not seen or heard from the Victim for eleven months, it does not appear that Ugljesa was legitimately added to, or authorized to use, the Victim's credit card.

36.     On July 27, 2024, David's Apple iPhone was reported to Apple as being lost or stolen.   Apple sent an email to David's email address indicating that a subsequent email would be sent from AIG, the insurance company that Apple uses to replace iPhones, with further instructions.   David's Apple iPhone has been in FBI custody since his arrest on May 4, 2024. By reporting the iPhone device lost or stolen, Apple allows the device to be locked with the device passcode.   In addition, Apple does not allow the lost or stolen device to be accessed even if someone attempting to access the device had the passcode available.   Additionally, when an iPhone is reported lost or stolen, Apple has the capability to remotely lock the device, limit accessibility, and wipe the device, returning it to the manufacturer settings.   Accordingly, I

14

24-20201-CR-WILLIAMS(s), UNITED STATES' SEALED EX PARTE NOTICE OF FILING SEARCH WARRANT, GOVERNMENT'S EXHIBIT 1

believe that reporting David's Apple iPhone lost or stolen is another instance of Ugljesa tampering with evidence by attempting to hinder law enforcement's ability to access David's iPhone.

37.     On October 21, 2024, while in custody David called Ugljesa via the BOP prison phone system.   The call was recorded.   When David is connected to the call with Ugljesa, Ugljesa can be heard having a separate phone conversation pertaining to his attempt to access a "business account" online.   The other party on the call asked Ugljesa for his name, and he advised that it was David Knezevich.   Ugljesa advised that he was calling to confirm his identity because he was locked out of the account and cannot get access to his account online.   The representative on the line asks if it is okay to ask him questions to confirm his identity.   David is heard saying, "excellent" immediately after.   The representative told Ugljesa that he would receive a one-time passcode and asked him for his mobile number.   Ugljesa provided (954) 634-2104, which I know to be David's cell phone number from as early as October 2023, until his arrest. Seconds later, Ugljesa repeats the confirmation code (347530) to the representative.   Ugljesa providing the confirmation code to the representative demonstrated that he has access to an electronic device that receives notifications that are sent to David's cell phone number.   Based on Ugljesa receiving the code sent to David's cell phone number, I believe that Ugljesa is the individual who reported David's iPhone lost or stolen while David was incarcerated.   Accordingly, this is another instance of Ugljesa tampering with evidence by attempting to hinder law enforcement's ability to access David's iPhone.

38.     Lastly, on December 29, 2024, Ugljesa[11] flew from Miami, Florida, to Lisbon, Portugal via TAP Airlines Flight 224, and the following day from Lisbon, Portugal to Sevilla,

---

[11] Ugljesa was accompanied on the trip by his wife and two children.

Spain.   On December 31, 2024, Spanish law enforcement advised U.S. law enforcement that Ugljesa checked into a hotel in Sevilla starting December 30, 2024, through January 3, 2025. Ugljesa's whereabouts on January 4th to January 5th are unknown.     Nevertheless, I know Madrid, Spain, the city where the Victim went missing, is approximately a 5-hour drive from Sevilla, and is also easily accessible by train from Sevilla in approximately 3 hours.   On January 6, 2025 (three days after the end of his reservation), Ugljesa flew from Sevilla to Lisbon, and the following day took TAP Airlines Flight 223 to Miami, Florida, where he arrived on January 7, 2025.

## EVIDENCE TO BE LOCATED IN THE TARGET DEVICES

39.     Based on my training and experience, I know that premeditated crimes, especially those involving international travel, require considerable planning and often require the assistance of others to both carry out and conceal. I also know that once individuals who commit such crimes are detained in custody, those individuals sometimes rely on others who are not detained to destroy evidence and tamper with witnesses.

40.     Additionally, because of the pervasiveness of the internet in today's world, I know that individuals who help others carry out and conceal their crimes typically possess electronic devices, such as computers or cell phones, and I know that crimes committed in the current age typically generate some type of electronic evidence or digital footprint.   For example, perpetrators' computers and cell phones can reveal specific steps they took to commit a crime, such as communicating with co-communicating with co-conspirators, researching information about potential trial witnesses, researching ways to effectively destroy electronic evidence contained in their co-conspirator's electronic devices or cloud storage or other internet-based accounts, as well as reveal their location during relevant times.

16

41.     I also know that those who commit financial crimes, such as access device fraud, bank fraud, and wire fraud, often do so through banking websites via their electronic devices in an attempt to avoid identification and detection by law enforcement. I know evidence of those transactions and communications are often stored on the individual's electronic devices.

42.     Here, based on the forgoing, there is probable cause to believe that the **TARGET DEVICES** will contain evidence of the **TARGET OFFENSES**.   For example, the **TARGET DEVICES** are likely to contain communications between Ugljesa and others regarding the destruction of evidence of David's crimes, similar to those found in David's mothers iPad with Ugljesa.   The **TARGET DEVICES** will also likely contain evidence of Ugljesa's possession or use of the Victim's personal identification information; records demonstrating Ugljesa's use of the Victim's bank accounts; communications between Ugljesa and others regarding the purpose of his recent to trip to Spain; communications between Ugljesa and David regarding the division of David and the Victim's marital assets; and location information relevant to the **TARGET OFFENSES**. Therefore, I am requesting to search the **TARGET DEVICES**, for evidence of the **TARGET OFFENSES**, as described in Attachment B, from February 2, 2024, to the execution of this warrant.

**MANNER OF EXECUTION**

43.     On January 9, 2025, counsel for David filed an Expedited Motion for Order Temporarily Staying Government Review or Use of Seized Electronics by David Knezevich.   *See* (DE 133), Case No. 24-CR-20201-WILLIAMS.   The Motion claims that Ugljesa is a "part of the Knezevich defense team" and that the **TARGET DEVICES** contain attorney-client communications and attorney work product.   The government does not believe David has standing to challenge HSI's detention of Ugljesa's devices or a good faith basis to assert that

17

24-20201-CR-WILLIAMS(s), UNITED STATES' SEALED EX PARTE NOTICE OF FILING SEARCH WARRANT, GOVERNMENT'S EXHIBIT 1

Ugljesa, who is not a lawyer and is not employed by David's lawyers, is a member of the defense team.   Even so, the government has not reviewed, used, or accessed the **TARGET DEVICES** or the data contained therein.   Instead, the government is seeking the instant search warrant.   Upon issuance of the search warrant, the devices will be extracted and the data provided to a filter Assistant United States Attorney for review so as to prevent the government from exposure to any privileged information.

### CONCLUSION

44.    Based on the foregoing, your Affiant respectfully submits that there is probable cause to believe that **TARGET DEVICES** will contain fruits, instrumentalities, and evidence of violations of Title 18, United States Code, Sections 1119 and 2 (foreign murder of a United States national), 3 (accessory after the fact), 1519 (destruction, alteration, or falsification of records in federal investigations), 1028 (access device fraud), 1343 (wire fraud), 1349 (attempt/conspiracy to commit wire fraud), and 1344 (bank fraud) (collectively, the **"TARGET OFFENSES"**).

**FURTHER AFFIANT SAYETH NAUGHT.**

EMMA PITTZ
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1
by Face Time this _10th_ day of January 2025.

HONORABLE JONATHAN GOODMAN
UNITED STATES CHIEF MAGISTRATE JUDGE

18

24-20201-CR-WILLIAMS(s), UNITED STATES' SEALED EX PARTE NOTICE OF FILING SEARCH WARRANT, GOVERNMENT'S EXHIBIT 1

## ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is one (1) white Google Pixel with a clear plastic case, Serial Number and IMEI Number unknown because the phone is locked (**"TARGET DEVICE 1"**), and one (1) silver HP laptop, Model 15-fh0097nr, Serial Number CND3401XJZ (**"TARGET DEVICE 2"**), together with any internal electronic storage devices (collectively, the **"TARGET DEVICES"**). The **TARGET DEVICES** are currently in the custody of the Homeland Security Investigations Office, located at Miami International Airport, 2100 Northwest 42nd Avenue, Miami, Florida, 33142.

**TARGET DEVICE 1** is pictured below:



24-20201-CR-WILLIAMS(s), UNITED STATES' SEALED EX PARTE NOTICE OF FILING SEARCH WARRANT, GOVERNMENT'S EXHIBIT 1

**TARGET DEVICE 2** is pictured below:





## ATTACHMENT B

## ITEMS TO BE SEIZED

The **TARGET DEVICES** are to be searched for the following information, which will contain fruits, instrumentalities, and evidence of violations of Title 18, United States Code, Sections 1119 and 2 (foreign murder of a United States national), 3 (accessory after the fact), 1519 (destruction, alteration, or falsification of records in federal investigations), 1028 (access device fraud), 1343 (wire fraud), 1349 (attempt/conspiracy to commit wire fraud), and 1344 (bank fraud) (collectively, the "**TARGET OFFENSES**") from February 2, 2024 to the execution of this warrant, including:

1.    All records and information relevant to the Victim's disappearance, kidnapping, or murder, and any efforts to conceal, destroy, or tamper with any related evidence;

2.    All records and information relevant to the possession or use of the Victim's personal identification information, property, or any of the Victim's accounts;

3.    All records and information related to Ugljesa's travel to Europe from December 2024 through January 2025, including photos, videos, communications, travel records, location information, financial information, web search history, vehicle rental records, and hotel records;

4.    All records and information related to David and the Victim's separation and/or divorce, the division of marital assets, and the depletion of marital assets after the Victim's disappearance;

5.    Communications between Ugljesa and others, including David, that are relevant to the **TARGET OFFENSES**, including communications about efforts to conceal, destroy, or tamper any related evidence, and any identifying information related to the individuals that Ugljesa communicated with;

6.    All bank records, checks, credit card bills, account information, and other financial records relevant to the **TARGET OFFENSES**, including records and information related to Western Union payments made to Bureau of Prison inmates;

7.    Location history relevant to the **TARGET OFFENSES**;

8.    Internet activity, firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses that are relevant to the **TARGET OFFENSES**;

9.      All records of and information about Internet Protocol addresses used by the **TARGET DEVICES**;

10.     Evidence indicating how and when the **TARGET DEVICES** were accessed or used (and by whom) to determine the chronological context of their access, use, and events relating to **TARGET OFFENSES**;

11.     Evidence of who used, owned, or controlled the **TARGET DEVICES** at the time that any of the items in this attachment were used, maintained, accessed, or created;

12.     Evidence of storage devices or similar containers for electronic evidence being used by the **TARGET DEVICES**;

13.     Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the **TARGET DEVICES**;

14.     Evidence of software that would allow others to control the **TARGET DEVICES**, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

15.     Evidence of the lack of such malicious software;

16.     Evidence of the use of virtual private networks or private browsers;

17.     Passwords, encryption keys, and other access devices that may be necessary to

access the **TARGET DEVICES**; and

18.     Documentation and manuals that may be necessary to access the **TARGET DEVICES** or to conduct a forensic examination of the **TARGET DEVICES**.

As used above, the terms "records" and "information" include all of the above-described items of evidence in whatever form and by whatever means they may have been created or stored.

24-20201-CR-WILLIAMS(s), UNITED STATES' SEALED EX PARTE NOTICE OF FILING SEARCH WARRANT, GOVERNMENT'S EXHIBIT 1

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>One Google Pixel Cell Phone and One HP Laptop<br>Computer, in the custody of Homeland Security<br>Investigations, as more fully described in Attachment A. | )<br>)<br>)  Case No. 25mj02063 Goodman<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the          Southern          District of          Florida
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before          January 24, 2025          *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to          duty Magistrate Judge          .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:          1/10/2025 at 5:42 PM          _____
*Judge's signature*

City and state:       Miami, Florida          Honorable Jonathan Goodman, United States Chief Magistrate Judge
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED

The property to be searched is one (1) white Google Pixel with a clear plastic case, Serial Number and IMEI Number unknown because the phone is locked ("**TARGET DEVICE 1**"), and one (1) silver HP laptop, Model 15-fh0097nr, Serial Number CND3401XJZ ("**TARGET DEVICE 2**"), together with any internal electronic storage devices (collectively, the "**TARGET DEVICES**"). The **TARGET DEVICES** are currently in the custody of the Homeland Security Investigations Office, located at Miami International Airport, 2100 Northwest 42nd Avenue, Miami, Florida, 33142.

**TARGET DEVICE 1** is pictured below:



**TARGET DEVICE 2** is pictured below:





## ATTACHMENT B

## ITEMS TO BE SEIZED

The **TARGET DEVICES** are to be searched for the following information, which will contain fruits, instrumentalities, and evidence of violations of Title 18, United States Code, Sections 1119 and 2 (foreign murder of a United States national), 3 (accessory after the fact), 1519 (destruction, alteration, or falsification of records in federal investigations), 1028 (access device fraud), 1343 (wire fraud), 1349 (attempt/conspiracy to commit wire fraud), and 1344 (bank fraud) (collectively, the "**TARGET OFFENSES**") from February 2, 2024 to the execution of this warrant, including:

1. All records and information relevant to the Victim's disappearance, kidnapping, or murder, and any efforts to conceal, destroy, or tamper with any related evidence;

2. All records and information relevant to the possession or use of the Victim's personal identification information, property, or any of the Victim's accounts;

3. All records and information related to Ugljesa's travel to Europe from December 2024 through January 2025, including photos, videos, communications, travel records, location information, financial information, web search history, vehicle rental records, and hotel records;

4. All records and information related to David and the Victim's separation and/or divorce, the division of marital assets, and the depletion of marital assets after the Victim's disappearance;

5. Communications between Ugljesa and others, including David, that are relevant to the **TARGET OFFENSES**, including communications about efforts to conceal, destroy, or tamper any related evidence, and any identifying information related to the individuals that Ugljesa communicated with;

6. All bank records, checks, credit card bills, account information, and other financial records relevant to the **TARGET OFFENSES**, including records and information related to Western Union payments made to Bureau of Prison inmates;

7. Location history relevant to the **TARGET OFFENSES**;

8. Internet activity, firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses that are relevant to the **TARGET OFFENSES**;

9.      All records of and information about Internet Protocol addresses used by the **TARGET DEVICES**;

10.      Evidence indicating how and when the **TARGET DEVICES** were accessed or used (and by whom) to determine the chronological context of their access, use, and events relating to **TARGET OFFENSES**;

11.      Evidence of who used, owned, or controlled the **TARGET DEVICES** at the time that any of the items in this attachment were used, maintained, accessed, or created;

12.      Evidence of storage devices or similar containers for electronic evidence being used by the **TARGET DEVICES**;

13.      Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the **TARGET DEVICES**;

14.      Evidence of software that would allow others to control the **TARGET DEVICES**, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

15.      Evidence of the lack of such malicious software;

16.      Evidence of the use of virtual private networks or private browsers;

17.      Passwords, encryption keys, and other access devices that may be necessary to

access the **TARGET DEVICES**; and

18.      Documentation and manuals that may be necessary to access the **TARGET DEVICES** or to conduct a forensic examination of the **TARGET DEVICES**.

As used above, the terms "records" and "information" include all of the above-described items of evidence in whatever form and by whatever means they may have been created or stored.