UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cr-20201-KMW

UNITED STATES OF AMERICA,

v.

DAVID KNEZEVICH,

    Defendant.
_____/

**REPLY IN SUPPORT OF MOTION FOR RELIEF REGARDING
ELECTRONICS SEIZED FROM DEFENDANT'S BROTHER**

Defendant, David Knezevich ("Knezevich"), by and through his undersigned counsel, respectfully submits this Reply in Support of Motion for Relief Regarding Electronics Seized from Knezevich's Brother.

There is no longer any question that the Government trial team is seeking to benefit from the deliberate stop, interrogation, and search of Knezevich's brother ("U.K.") and his family, including two minor children (ages 3 and 5). This was unacceptable conduct, and so is the Government trial team's zeal to benefit from it. The Government trial team's goal is to obtain U.K.'s electronics from a pretextual "routine" border stop. While the unfortunate state of the law in this Circuit may be that U.K. does not have a strong Fourth Amendment challenge to the baseless harassment and seizure he and his family endured, and that Knezevich may generally lack standing to assert a Fourth Amendment challenge, there is no such impediment to Knezevich seeking relief to prevent the Government trial team from invading his defense team and defense strategy in violations of his Fifth and Sixth Amendment rights.[1]

---

[1] Assuming that the after-the-fact search warrant, which the Government is submitting for *in camera* review by the Court, confirms that the seizure relates to the instant case against Knezevich and not some other independent criminal investigation involving U.K.

If the Government trial team is permitted to benefit from a complete pre-textual/sham stop of Knezevich's brother, to seize electronics without a search warrant to invade the defense camp and obtain defense strategy, the result is, at a minimum, a violation of Knezevich's due process rights and his right to counsel.

Knezevich's challenge to this "stop" is not predicated on a violation of his Fourth Amendment rights. It is predicated on the Government's potential misconduct[2] if it directed this stop and seizure of a known member of the defense team to invade the defense camp and obtain defense strategy to which it is not entitled.

### I. The Court Should Invoke Its Supervisory Powers To Prohibit Use Or Review Of The Seized Electronics

The Court has inherent supervisory powers over "the administration of criminal justice among the parties before the bar." *U.S. v. Santana*, 640 F.Supp.3d 1293, 1305 (S.D. Fla. 2022) (internal quotations omitted). The inherent supervisory power is designed to preserve the integrity of the judicial system and prevent courts from being "**accomplices to governmental misconduct**." *Id*. at 1305-06 (citing *U.S. v. Noriega*, 746 F.Supp. 1506, 1535 (S.D. Fla. 1990)) (emphasis added).

As Judge Hoeveler recognized in *Noriega*, *supra*:

> Courts have consequently invoked the [supervisory powers] doctrine to suppress evidence and dismiss indictments in the face of severe or pervasive prosecutorial abuse … **Thus, supervisory authority is in essence a judicial vehicle to deter conduct and correct injustices which are neither constitutional nor statutory violations, but which the court nonetheless finds repugnant to fairness and justice and is loathe to tolerate.**

---

[2] For the Court to be fully advised of the facts and circumstances surrounding this "stop," Knezevich requests that the Government be compelled to disclose the circumstances of how this "stop" was initiated, and what involvement the Government trial team, including agents, had in this activity. Knezevich is entitled to this information to prepare a meaningful supplemental brief.

*Noriega*, at 1535 (emphasis added). Moreover, the "abuse" or misconduct need not be directly imposed upon the defendant himself:

> Since, as stated earlier, use of supervisory authority presents an independent body of law and does not depend on the existence of a constitutional or statutory violation, <u>the fact that a defendant's own such rights have not been violated is not decisive</u>.

*Id*. at 1536 (citations omitted) (emphasis added).

Finally, "[t]he court's supervisory powers allow it to remedy improper government action and are broader in scope than the applicable procedural rules. *United States v. Cottingham*, No. 5:19-cr-00010-LCB-JHE-1, 2020 WL 4341720, at *5 (N.D. Ala. July 6, 2020); *see also*, *United States v. Hasting*, 461 U.S. 499, 505 (1983) ("The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally, as a remedy designed to deter illegal conduct").

### A. The Government's conduct is unacceptable.

As the Court pointed out at the hearing on January 15, 2025, the law of this Circuit is not entirely clear on the validity of a warrantless border stop and seizure without reasonable suspicion. *See U.S. v. Touset*, 890 F.3d 1227, 1233 (11th Cir. 2018) (stating that reasonable suspicion is not required but analyzing whether reasonable suspicion existed anyway). Certainly, the law of other Circuits <u>is clear</u> that border stops may not be conducted for general law enforcement purposes and must be "in enforcement of customs laws.") *See, e.g., U.S. v. Cano*, 934 F.3d 1002, 1013 (9th Cir. 2021). Rather, "[a] general search cannot be 'justif[ied] . . . **on the mere basis that it occurred *at the border*.**'" *Id*. (emphasis added). See also, *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 264 (E.D.N.Y. 2021)("the border search doctrine … **is not so expansive as to entirely overshadow**

**the Bill of Rights simply because the challenged Government conduct occurs at the border**.")(emphasis added)

The Government's reliance on *Touset* in this case, under the present circumstances, is misplaced. In *Touset,* the Eleventh Circuit was "unpersuaded that a traveler's privacy interest should be given greater weight **than the paramount interest [of the sovereign] in protecting … its territorial integrity**." *U.S. v. Touset*, 890 F.3d 1227, 1235 (11th Cir. 2018) (emphasis added). Here, there was no interest whatsoever in "in protecting its territorial integrity" because it was a sham and pretextual search/seizure.[3] As this Court noted:

> …. Let me say **that this** search -- or the **initial stop -- was not made to protect the border**; **and I would hope no one here would insult anyone present with that argument**. **The man was stopped because he was the defendant's brother…** Be that as it may, the state of the law as to border encounters is what it is.

(**Exhibit A**, transcript from January 15, 2025, hearing, at 45) (emphasis added).

Here, the Government's conduct regarding the stop, interrogation, and seizure from U.K. was beyond the pale and should shock the conscience. As this Court recognized, it is clear that none of the recognized rationales for border searches apply to Defendant's brother or his family.

Border stops are intended to seize contraband and preserve national security. Because of the importance of protecting our borders, border agents are given extraordinary power and discretion. The Government improperly capitalized on that power and seeks to benefit from border agents stopping him upon his re-entry into this country from a family vacation.[4] Border agents

---

[3] "Notably, however, the Eleventh Circuit articulated this broad rule [in *Touset*] in cases focusing on reasonable suspicion of contraband in the form of child pornography, which other Circuits agree would allow some form of warrantless search because it constitutes 'contraband' rather than evidence of a crime." *United States v. Fox*, 2024 WL 3520767 at *24 (E.D.N.Y. July 24, 2024).

[4] Given what transpired at the January 15, 2025, hearing, it appears that the Government trial team is potentially behind flagging U.K. to be stopped in the first instance. For Knezevich to effectively establish a proper record upon which to proceed, Knezevich respectfully requests an order directing the Government to state with clarity what actions or directives it , or its Agents, made regarding the stop.

4

held U.K. until <u>five </u>Homeland Security agents arrived and seized his electronics. All of this was a desperate attempt by the Government to gain an advantage in a capital case against Knezevich where the Government is relying entirely on circumstantial evidence. The Government <u>is still investigating and seeking additional evidence in this case</u>, despite arresting and detaining Knezevich nine months ago. The Court should not condone the Government's conduct. Knezevich respectfully requests that the Court invoke its supervisory powers to prevent the Government from gaining a tactical advantage in this case by reviewing or using the contents of the seized electronic devices in this action.

### B. The Government Abused the Border Search Exception by Orchestrating this Detention

The border-search exception serves "two main purposes: to allow the regulation of the collection of duties, and 'to prevent the introduction of contraband into this country.'" *United States v Carpenter,* 2023 WL 358794 at 7 . The better view, expressed by the Fourth Circuit, is **that to qualify as a border search, the conduct must have some "nexus to the recognized historic rationales justifying the border search exception**." *United States v. Aigbekaen*, 943 F.3d 713, 721 (4th Cir. 2019) (emphasis added)

In *Aigbekaen*, the government's "suspicions were entirely unmoored from [it's] sovereign interests in protecting national security, collecting or regulating duties, blocking Aigbekaen's own entry, or excluding contraband. Thus, holding the border search exception applicable …, based simply on the Government's knowledge of domestic crimes, would 'untether' that exception from its well-established justifications. *Riley v California*, 573 U.S. 373 at 386, 134 S.Ct 2473,189 L. Ed.2d. 430 (2014) ."

Cases have recognized that an inquiry into the government's **motives** for conducting the purported "border search" may be informative. See, *e.g.*, *United States v Carpenter,* Supra,

5

("Inquiring into the purpose behind the searches is therefore appropriate to determine whether the border-search exception applies. Since the Government's purpose in searching Carpenter's cell phone **had no grounding in the special needs underlying the border-search exception, the exception does not apply**."). (emphasis added)

### C. The after-the-fact search warrant does not cure the improper seizure.

The Government asserts in its response that Knezevich's motion is moot because it later obtained a search warrant for the devices it had already improperly seized from U.K. Without access to the warrant and supporting affidavit, the defense is substantially handicapped in its ability to meaningfully address this issue. However, numerous courts have found that after-the-fact search warrants are not a panacea to improper conduct that result in "<u>gratuitous violations of constitutional rights</u>." *See*, *e.g.*, *U.S. v. Maxwell*, 734 F.Supp. 280, 283 (S.D. Tex. 1990) (emphasis added); *see also U.S. v. Bergin*, 732 F.Supp.2d 1235, 1254 (M.D. Fla. 2010) (recognizing that an **after-the-fact search warrant can be tainted by a constitutional violation that has already occurred).** Similarly, the mere fact the Government <u>later</u> secured a search warrant does not presumptively "sanitize" a prior unlawful search or seizure. *See*, *e.g.*, *United States v. O'Neal*, 17 F.3d 239, 242 n.6 (8th Cir. 1994) ("If clearly illegal police behavior can be sanitized by the issuance of a search warrant, then there will be no deterrence, and the protective aims of the exclusionary rule will be severely impaired if not eliminated.").[5] Here, even if the Court determines that the Government's conduct was not illegal, Knezevich's Fifth, Sixth, and Eighth

---

[5] *See also United States v. Groce*, No. 2:15-cr-511-KKD-GMB, 2016 WL 3892487, at *6 n.8 (M.D. Ala. July 1, 2016) ("This recommendation has no bearing on whether the officers could now obtain a warrant to search the items currently in their possession - an issue that is not now before the court. The court holds only that the promise of a potential future warrant for Groce's DNA and mobile telephone cannot cure the prior illegal searches."); *United States v. Ganias*, 824 F.3d 199, 239 (2d Cir. 2016) Chin, Circuit Judge, dissenting **("[a] warrant is not a Band-Aid that the Government may seek when it realizes its Fourth Amendment violation has been discov**ered.")(emphasis added)

6

Amendment constitutional rights are still violated by the Government's conduct and the search warrant does not cure those violations.

Without access to the affidavit and warrant , the defense cannot meaningfully develop an argument addressing this factor, which creates a separate fundamental fairness issue. *See generally In re Search Warrant*, 16-mc-00464 (PKC), 2016 WL 7339113, *3 (S.D.N.Y. December 19, 2016) ("Search warrants and associated documents go to the heart of the judicial function. The judicial determination whether to grant a search warrant, and thus allow the government to enter and search private property, directly affects individuals' substantive rights. Documents that a court relies on in making this determination, such as affidavits, directly affect the court's adjudication of those rights. **The common law presumption of access to the search warrant and related materials sought by applicant is thus entitled to great weight**.") (emphasis added); *see also*, *In re Search Warrant Dated October 13, 2023*, 2023 WL 6938292, *5 (S.D.N.Y. October 20, 2023) ("In short, the law enforcement interest advanced by the Government is insufficient to outweigh the great weight afforded the common law right of access to the Affidavit.")

An additional issue concerns the "attenuation" of <u>even a proper</u> "border search" (which we submit did not occur here), whereby any initial justification is no longer applicable. See, *e.g.*, *Aigbekaen*, 943 F.3d at 725 (noting the Court's recognition that "a search initiated at the border could become so attenuated from the rationale for the border search exception that it no longer would fall under that exception" and that principle applied "to hold unconstitutional such an attenuated, <u>warrantless, nonroutine forensic search at the border</u>."). Like one district court recently recognized, the Government "appears to have attempted to use the border-search exception to shirk the warrant requirement that otherwise applies to cellphones when there was no nexus between the

7

search and the justifications for this claimed exception. This search was therefore not reasonable …" *United States v Fox*, 2024 WL 3520767 at *17.

### D. The cases cited by the Government are distinguishable.

The Government takes several other inaccurate positions in response to Knezevich's motion. First, the Government claims that the pretextual nature of the border stop is irrelevant. The Government cites *U.S. v. Irving*, 452 F.3d 110 (2d Cir. 2006) and *U.S. v. Vallerius*, No. 17-CR-20648-SCOLA, 2018 WL 2325729, at *7 (S.D. Fla. May 1, 2018). *Irving* involved the stop of a defendant who possessed child pornography. *Vallerius* involved the stop of a defendant who possessed evidence of drug dealing on the dark web. In both cases, the two defendants were stopped at the border on a pretext to obtain evidence of crimes *those defendants themselves committed*. Said another way, in both cases the pretextual stop was to obtain evidence of crimes committed by the person who was stopped. Neither of these cases is factually similar what occurred here. Here, an innocent man (U.K.) and his family were stopped on a pre-text to *invade the defense camp and obtain defense strategy* for a separate capital criminal matter involving U.K.'s brother. The Government has not cited any case law where a pretextual stop for that purpose is excused.

Second, the Government claims that Knezevich cannot make a pre-execution challenge to a search of U.K.'s electronics and lacks standing to challenge the search. These are red herrings. Knezevich has consistently argued that the Government's review and use of the electronics to invade the defense camp *in this capital case* would be improper and would put the Government on an uneven playing field, in violation of Knezevich's Fifth, Sixth, and Eighth Amendment rights.

### II. In The Alternative, The Court Should Invoke Its Supervisory Powers To Order Filter Protocols That Prevent Potential Prejudice To Knezevich

In the alternative, <u>and without abandoning or minimizing the above arguments</u>, to the extent the Court finds that a filter team is sufficient to prevent potential prejudice caused by the

8

seizure and impending search, Knezevich requests that the Court invoke its supervisory powers to order that the filter team adhere to the following protocols:[6]

- The filter team will work cooperatively with defense counsel to conduct key word searches and sender/recipient filtering to flag potentially privileged or work product documents;

- All information discussed between the defense and Government filter team will remain confidential and will not be shared with the Government trial team, including all agents, experts and staff;

- Defense counsel is permitted to review *any seized* documents <u>before they are turned over to the Government trial team;</u>

- In the event of any dispute between the defense and the Government filter team on any issue, the matter must be submitted to and resolved by the Court independent of the Government trial team; and

- Any filings that are necessary in connection with the filter review shall be filed under seal and removed from the trial team's view.

The defense sent emails on January 15 and January 16 to obtain contact information for the Government filter team attorney. On January 16, the Government provided the defense with the requested information. The defense immediately requested a phone call with the filter team attorney, so that the parties could discuss the foregoing and the defense's concerns about the sufficiency of a filter team in this unique case. The filter team attorney responded that she is out of town through Monday and cannot get on a call until after the deadline for this reply.

---

[6] The Court has discretion to order specific filter team protocols. *See In re Sealed Search Warrant and Application for a Warrant by Telephone or Other Reliable Electronic Means*, 11 F.4th 1235 (11th Cir. 2021) (finding district court did not abuse discretion in approving certain protocols; **discussing cases where various filter protocols are set by the courts).**

Knezevich respectfully submits that, based on the unique circumstances present, and only to the extent the Court finds a filter team is sufficient to protect his rights (which Knezevich does not concede), the foregoing filter protocols are necessary for same. Knezevich detailed his concerns regarding privilege and work product in the original motion and during the hearing on January 15. In particular, the defense is substantially concerned that work product will slip through the privilege review, given some of the tasks U.K. was asked to perform on behalf of the defense. While some of the requested protocols may be outside the norm for a filter team, this is a unique case, and the electronic information was seized under unique and questionable circumstances.

WHEREFORE, for the foregoing reasons, undersigned counsel respectfully requests entry of order (1) prohibiting the Government, including all prosecutors and agents, from reviewing, using, or accessing any of the electronic devices seized from U.K. on January 7, 2025; or (2) in the alternative, requiring that the Government filter team adhere to the following protocols:

- The filter team will work cooperatively with defense counsel to conduct key word searches and sender/recipient filtering to flag potentially privileged or work product documents;
- All information discussed between the defense and Government filter team will remain confidential and will not be shared with the Government trial team, including all agents, experts and staff;
- Defense counsel is permitted to review *any seized* documents before they are turned over to the Government trial team;
- In the event of any dispute between the defense and the Government filter team on any issue, the matter must be submitted to and resolved by the Court independent of the Government trial team; and

- Any filings that are necessary in connection with the filter review shall be filed under seal and removed from the trial team's view.

In addition, Knezevich respectfully requests an entry of an Order directing the Government trial team to state what directives and conduct it engaged in regarding this sham pretext of a border search and detention of U.K. and his family, in order to effectively develop (or abandon) the issues raised.

Respectfully Submitted,

Dated: January 20, 2025.

| **By: s/ Jayne C. Weintraub, Esq.** | **By: s/ Bruce A. Zimet, Esq.** |
|---|---|
| Florida Bar No. 320382 | Florida Bar No. 0225053 |
| **SALE & WEINTRAUB, P.A.** | **BRUCE A. ZIMET, P.A.** |
| 2 South Biscayne Blvd. | 1555 Palm Beach Lakes Blvd., Suite 1400 |
| One Biscayne Tower – 21st Floor | West Palm Beach, FL 33401 |
| Miami, Florida 33131 | Tel:   (561) 508-7741 |
| Tel: (305) 374-1818 | Tel:   (954) 764-7081 |
| Email: JWeintraub@SaleWeintraub.com | Email: BAZ@BruceAZimetLaw.com |

**By: s/ Christopher Cavallo, Esq.**
Florida Bar No. 0092305
**NELSON MULLINS**
2 South Biscayne Blvd.
One Biscayne Tower – 21st Floor
Miami, Florida 33131
Tel: (305) 373-9465
Email: Chris.Cavallo@NelsonMullins.com